## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE CATALANO, individually and on behalf of all others similarly situated, | Case No.: 24-cv-8817 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>**JURY TRIAL DEMANDED**</u> |
| GRIMMWAY ENTERPRISES, INC. d/b/a GRIMMWAY FARMS, | |
| Defendant. | |

Plaintiff, Wayne Catalano (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## <u>NATURE OF THE ACTION</u>

1.      Plaintiff brings this class action in the wake of an outbreak of dangerous E. Coli contamination and seeks to remedy the deceptive and misleading business practices of Grimmway Enterprises, Inc. d/b/a Grimmway Farms ("Defendant" or "Grimmway") with respect to the manufacturing, marketing, and sale of Defendant's Organic Whole and Baby Carrots Products throughout the state of New York and throughout the United States (hereinafter the "Products" or the "Carrots"):

***Organic WHOLE Carrots***

***available for purchase at retail from August 14 through October 23, 2024***

| Label | Bag Sizes | |
|-------|-----------|---|
| *365* | 1lb, 2lb, 5lb | *All of these organic whole carrots were available for purchase at retail stores from August 14 through October 23, 2024. No best-if-used-by-dates are on the bags of organic whole carrots.* |
| *Bunny Luv* | 1lb, 2lb, 5lb, 10lb, 25lb | |
| *Cal-Organic* | 1lb, 2lb, 5lb, 6lb, 10lb, 25lb | |
| *Compliments* | 2lb | |
| *Full Circle* | 1lb, 2lb, 5lb | |
| *Good & Gather* | 2lb | |
| *GreenWise* | 1lb, 25lbs | |
| *Marketside* | 2lb | |
| *Nature's Promise* | 1lb, 5lb | |
| *O-Organics* | 1lb, 2lb, 5lb, 10lb | |
| *President's Choice* | 2lb | |

| | | |
|---|---|---|
| *Simple Truth* | 1lb, 2lb, 5lb | |
| *Trader Joe's* | 1lb | |
| *Wegmans* | 1lb, 2lb, 5lb | |
| *Wholesome Pantry* | 1lb, 2lb, 5lb | |

**Organic BABY (cut and peeled) carrots with specific best-if-used-by dates**

| **Label** | **Bag Sizes** | *Best-if-Used-by-Dates are printed on the bag* | |
|---|---|---|---|
| | | **From** | *Through* |
| *365* | 12oz, 1lb, 2lb | *SEP 11 24* | *NOV 02 24* |
| *Bunny Luv* | 1lb, 2lb, 3lb, 5lb | *SEP 11 24* | *NOV 12 24* |
| *Cal-Organic* | 12oz, 1lb, 2lb, 2pk/2lbs | *SEP 11 24* | *NOV 02 24* |
| *Compliments* | 1lb | *SEP 14 24* | *OCT 24 24* |
| *Full Circle* | 1lb | *SEP 14 24* | *OCT 24 24* |
| *Good & Gather* | 12oz, 1lb | *SEP 14 24* | *NOV 02 24* |
| *GreenWise* | 1lb | *SEP 11 24* | *OCT 26 24* |

| | | | |
|---|---|---|---|
| *Grimmway Farms* | 25 lb bag | *SEP 11 24* | *OCT 03 24* |
| *Marketside* | 12oz, 1lb, 2lb | *SEP 11 24* | *NOV 02 24* |
| *Nature's Promise* | 1lb | *SEP 13 24* | *OCT 25 24* |
| *O-Organics* | 12oz, 1lb, 2lb | *SEP 11 24* | *NOV 02 24* |
| *President's Choice* | 1lb, 2lb | *11 SEP 24* | *02 NOV 24* |
| *Raley's* | 1lb | *SEP 14 24* | *OCT 23 24* |
| *Simple Truth* | 1lb, 2lb | *SEP 14 24* | *NOV 02 24* |
| *Sprouts* | 1lb, 2lb | *SEP 13 24* | *NOV 04 24* |
| *Trader Joe's* | 1lb | *SEP 13 24* | *NOV 04 24* |
| *Wegmans* | 12oz, 1lb, 2lb | *SEP 14 24* | *NOV 02 24* |
| *Wholesome Pantry* | 1lb, 2lb | *SEP 16 24* | *NOV 07 24* |

2.     Grimmway issued a recall of its Organic Whole and Baby Carrots Products on

November 16, 2024.[1]   As demonstrated in the paragraph above, these carrots were sold under different brand names at various retail outlets such as Whole Foods, Trader Joes, and more.

3.     Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products are contaminated with Escherichia coli (E. coli).

4.     As described in further detail below, the Carrots contain Escherichia coli (E. coli), which can cause severe gastrointestinal illness.[2]   The risk of serious infection is particularly concerning for children under the age of 5 years, adults older than 65, and people with weakened immune systems.[3]

5.     Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from known harmful substances, including Escherichia coli (E. coli).

6.     Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the produce products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and may even be life threatening.

7.     Unfortunately for Plaintiff and other consumers, the Carrots they purchased contain Escherichia coli (E. coli).

8.     Defendant is using a marketing and advertising campaign that omits from the advertising that the Carrots contain Escherichia coli (E. coli).  Knowing of the presence of Escherichia coli (E. coli) is material to reasonable consumers.  The presence of Escherichia coli (E. coli) was solely within the possession of Defendant, and consumers could only obtain

---

[1] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/grimmway-farms-recalls-organic-whole-and-select-organic-baby-carrots-may-be-consumers-homes-due
[2] https://www.fda.gov/food/foodborne-pathogens/escherichia-coli-e-coli
[3] *Id.*

such information by sending the products off to a laboratory for extensive testing.  This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with Escherichia coli (E. coli).

9.      E. coli is a group of bacteria that can cause infections in your gut (GI tract), urinary tract and other parts of your body.[4]

10.      Some strains can make you sick with watery diarrhea, vomiting and a fever. Shiga toxin-producing E. coli (STEC) is most likely to cause severe illness.[5]

11.      Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including Escherichia coli (E. coli).

12.      Plaintiff and those similarly situated certainly expect that the produce products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

13.      Unfortunately for consumers, like Plaintiff, the Carrots they purchased contained, or were at risk of containing, Escherichia coli (E. coli).

14.      The class action remedy is superior to Grimmway's failed recall in every conceivable fashion.

15.      Defendant is using a marketing and advertising campaign that omits from the advertising that the Carrots contain Escherichia coli (E. coli).  This omission leads a reasonable consumer to believe they are not purchasing a product that contains Escherichia coli (E. coli) when in fact they are purchasing a product contaminated with Escherichia coli (E. coli).

---

[4] https://my.clevelandclinic.org/health/diseases/16638-e-coli-infection
[5] *Id.*

16.    Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and advertising itself.  As such, a reasonable consumer reviewing Defendant's advertising and marketing reasonably believes that they are purchasing products that are safe for oral ingestion and do not contain any harmful ingredients.  Indeed, consumers expect the advertising to accurately disclose the presence of such bacteria within the Carrots.  Thus, reasonable consumers would not think that Defendant is omitting that the Carrots contain, or are at risk of containing, Escherichia coli (E. coli).

17.    Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Carrots do contain, or risk containing, Escherichia coli (E. coli), which is dangerous to one's health and well-being.  Nevertheless, Defendant does not list or mention Escherichia coli (E. coli) anywhere on the Carrots packaging.

18.    Defendant's misrepresentations and omissions of the safety of the Carrots was material to Plaintiff and Class Members Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received were produce products contaminated with Escherichia coli (E. coli) that is harmful to consumers' health.

19.    That is because Defendant's Carrots containing, or at risk of containing Escherichia coli (E. coli), have no value, or at the very least, Defendant was able to charge significantly more for the Carrots than they would have had they not omitted the fact that the Carrots contain—or possibly contain-- Escherichia coli (E. coli).

20.    As set forth below, produce products, such as Defendant's Carrots, are in no way safe for human consumption and are entirely worthless.

21.    Alternatively, Plaintiff and Class Members paid a price premium for the Carrots based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission.  Given that Plaintiff and Class Members paid a premium for the Carrots, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

22.    Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant also breached and continues to breach its warranties regarding the Products.

23.    Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period")

## FACTUAL BACKGROUND

24.    Defendant manufactures, markets, advertises, and sells produce products.

25.    Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest.  Companies, such as Defendant, have capitalized on consumers' desire for produce products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

26.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as Escherichia coli (E. coli), especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Carrots contain or are at risk of containing on the Carrots' packaging.

27.    The Carrots' packaging does not identify Escherichia coli (E. coli).  Indeed, Escherichia coli (E. coli) is not listed anywhere on the advertising, nor is there any warning about the inclusion (or even potential inclusion) of Escherichia coli (E. coli) in the Carrots.

This leads reasonable consumers to believe the Carrots do not contain, and are not at risk of containing, Escherichia coli (E. coli).

28.     However, the Carrots contain, or are at risk of containing, Escherichia coli (E. coli).

29.     Defendant is a large and sophisticated corporation that has been in the business of selling, and distributing produce products for many years, including the contaminated Carrots.

30.     Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Carrots and possesses unique and superior knowledge regarding the manufacturing process of the Carrots, the manufacturing process of the ingredients and raw materials the Carrots contain, and the risks associated with those processes, such as the risk of Escherichia coli (E. coli) contamination, as well as the ability to test the Carrots for Escherichia coli (E. coli) contamination prior to releasing the Carrots into the stream of commerce. Such knowledge is solely within the possession of Defendant.

31.     Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production of its Carrots.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

32.     Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Carrots.

33.     Therefore, Defendant's false, misleading, and deceptive omissions regarding the Carrots containing Escherichia coli (E. coli) is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

34. Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they orally ingest. Consumers such as Plaintiff and the Class Members are influenced by the advertising campaign, and the listed ingredients. Defendant knows that if they had not omitted that the Carrots contained Escherichia coli (E. coli), then Plaintiff and the Class would not have purchased the Carrots, or, at the very least, would not have paid nearly as much for the Carrots.

35. Consumers rely on marketing and information in making purchasing decisions.

36. By omitting that the Carrots include Escherichia coli (E. coli) on the packaging of the Carrots throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained Escherichia coli (E. coli).

37. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

38. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

39. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without Escherichia coli (E. coli) over comparable products not so marketed.

40. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

    a.    Paid a sum of money for Carrots that were not what Defendant represented;

b.    Paid a premium price for Carrots that were not what Defendant represented;

c.    Were deprived of the benefit of the bargain because the Carrots they purchased was different from what Defendant warranted;

d.    Were deprived of the benefit of the bargain because the Carrots they purchased had less value than what Defendant represented; and

e.    Were denied the benefit of the properties of the Carrots Defendant promised.

47.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Carrots they purchased and/or Plaintiff and the Class Members would not have been willing to purchase the Carrots.

48.    Plaintiff and the Class Members paid for Carrots that do not contain Escherichia coli (E. coli).  Since the Carrot do indeed or possibly contain Escherichia coli (E. coli), the Carrots Plaintiff and the Class Members received were worth less than the Carrots for which they paid.

49.    Plaintiff and the Class Members all paid money for the Carrots; however, Plaintiff and the Class Members did not obtain the full value of the advertised Carrots due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Carrots than they would have had they known the truth about the Carrots.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

50.    Plaintiff and Class Members saw the Carrots' packaging prior to purchasing the Carrots.  Had Plaintiff and Class Members known the truth about the Carrots, i.e., that they do

11

or possibly contain Escherichia coli (E. coli), they would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

## JURISDICTION AND VENUE

51.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York, and Defendant Grimmway is a citizen of California; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

52.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

53.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

54.     Plaintiff is a citizen and resident of Dutchess County, New York.  During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Carrots that contained Escherichia coli (E. coli), including the Carrots that were subject to the recall.  More specifically, during the class period (in 2024) Plaintiff purchased Nature's Promise Organic Whole Carrots at a Stop & Shop store in Poughkeepsie, New York.  Prior to purchasing the Product, Plaintiff saw the packaging of the Product.

55.     Had Defendant not made the false, misleading, and deceptive representations

and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products. The Products Plaintiff received were worthless because they contained Escherichia coli (E. coli). Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

56.     Defendant Grimmway is a California company with its principal place of business in Bakersfield, California.

57.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States and contributed to the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

58.     Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

59.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

60.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

61.     The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

62.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

63.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

64.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.     Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.     Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d.     Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e.     Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

14

65.    <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

66.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

67.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

68.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.      When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.      This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f.      This class action will assure uniformity of decisions among Class Members;

g.      The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.      It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

69.      Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
**Violation of Unfair Business Practices Act**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**
**(On Behalf of the Nationwide Class)**

70.     Plaintiff incorporates by reference each allegation set forth above in paragraphs as if fully articulated here in.

71.     Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

### UNFAIR

72.     California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

73.     In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

74.     Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiffs and members of the Class.  Plaintiff and the other members of the Class have suffered injury in fact due to Defendant's decision to sell them contaminated Products. Thus, Defendant's conduct has caused substantial injury to Plaintiff and the Class.

75.     Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Thus, the injury suffered by Plaintiff and the other members of the Class is not outweighed by any countervailing benefits to consumers.

76.     Finally, the injury suffered by Plaintiff and the other members of the Class are not an injury that these consumers could reasonably have avoided.  After Defendant falsely represented the qualities of the Products consumers would receive, the Plaintiff and other Class Members suffered injury in fact due to Defendant's sale of the Products to them.  Defendant failed to take reasonable steps to inform Plaintiff and the other class members that the Products were contaminated.  As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the other class members to purchase the Products. Therefore, the injury suffered by Plaintiff and the other members of the Class is not an injury which these consumers could reasonably have avoided.

77.     Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

78.     California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."   In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

79.     The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

80.     Here, not only were Plaintiff and the other Class members likely to be deceived, but these consumers were actually deceived by Defendant.  Such deception is evidenced by the fact that Plaintiff agreed to purchase the Products under the basic assumption that they were safe to consumer. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

81.     As explained above, Defendant deceived Plaintiff and other Class Members by fraudulently labeling the Products.

82.     Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**SECOND CAUSE OF ACTION**

**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

83.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

84.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

85.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

86.    Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

87.    Upon information and belief, Defendant knew about the E. Coli in its Products through, *inter alia*, its own product testing and records.

88.    Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have E. Coli —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have.  Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

89.    Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly,

Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

90.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

91.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

92.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

93.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

94.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

95.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in

21

said advertisement, or under such conditions as are customary or usual . . .

96.     Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain E. Coli.

97.     Upon information and belief, Defendant knew about the E. Coli in its Products through, *inter alia*, its own product testing and records.

98.     Plaintiff and the New York Subclass Members have been injured inasmuch as they saw the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

99.     Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

100.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

101.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

102.     Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

103.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

104.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

105.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

106.    Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, and/or selling of the Products.

107.    The Products are considered a "good" under the relevant laws.

108.    UCC section 2-314 provides that for goods to be merchantable must (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved.

109.    Defendant breached the implied warranty of merchantability because the Products have E. Coli.  Food products are not expected to have E. Coli.

110.    Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Product.  Upon information and belief, Defendant knew about the E. Coli in its Products and was put on constructive notice of its breach through its own product testing and records.

111.    Plaintiff and each of the members of the Class were injured because the Products contained E. Coli.  Defendant thereby breached the following state warranty laws:

a.      Code of Ala. § 7-2-314;

b.      Alaska Stat. § 45.02.314;

c.      A.R.S. § 47-2314;

d.      A.C.A. § 4-2-314;

e.      Cal. Comm. Code § 2314;

f.      Colo. Rev. Stat. § 4-2-314;

g.      Conn. Gen. Stat. § 42a-2-314;

h.      6 Del. C. § 2-314;

i.      D.C. Code § 28:2-314;

j.      Fla. Stat. § 672.314;

k.      O.C.G.A. § 11-2-314;

l.      H.R.S. § 490:2-314;

m.      Idaho Code § 28-2-314;

n.      810 I.L.C.S. 5/2-314;

o.      Ind. Code § 26-1-2-314;

p.      Iowa Code § 554.2314;

q.      K.S.A. § 84-2-314;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-314;

t.      Md. Commercial Law Code Ann. § 2-314;

u.      106 Mass. Gen. Laws Ann. § 2-314;

v.      M.C.L.S. § 440.2314;

w.      Minn. Stat. § 336.2-314;

x.      Miss. Code Ann. § 75-2-314;

y.      R.S. Mo. § 400.2-314;

z.      Mont. Code Anno. § 30-2-314;

aa.     Neb. Rev. Stat. § 2-314;

bb.     Nev. Rev. Stat. Ann. § 104.2314;

cc.     R.S.A. 382-A:2-314;

dd.     N.J. Stat. Ann. § 12A:2-314;

ee.     N.M. Stat. Ann. § 55-2-314;

ff.     N.Y. U.C.C. Law § 2-314;

gg.     N.C. Gen. Stat. § 25-2-314;

hh.     N.D. Cent. Code § 41-02-31;

ii.     II. O.R.C. Ann. § 1302.27;

jj.     12A Okl. St. § 2-314;

kk.     Or. Rev. Stat. § 72-3140;

ll.     13 Pa. Rev. Stat. § 72-3140;

mm.     R.I. Gen. Laws § 6A-2-314;

nn.     S.C. Code Ann. § 36-2-314;

oo.     S.D. Codified Laws, § 57A-2-314;

pp.     Tenn. Code Ann. § 47-2-314;

qq.     Tex. Bus. & Com. Code § 2.314;

rr.     Utah Code Ann. § 70A-2-314;

ss.     9A V.S.A. § 2-314;

tt.     Va. Code Ann. § 8.2-314;

uu.    Wash. Rev. Code Ann. § 6A.2-314;

vv.    W. Va. Code § 46-2-314;

ww.    Wis. Stat. § 402.314; and

xx.    Wyo. Stat. § 34.1-2-314.

112.    As a direct and proximate result of Defendant's breach of the implied warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, or in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and All Class Members in the Alternative)

113.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

114.    Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

115.    Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

116.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

117.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

118.    It is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

119.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

Dated: November 19, 2024

Respectfully submitted,

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese, Esq.
100 West 93rd Street, 16th Floor
New York, New York 10025
(212) 643-0500
*mreese@reesellp.com*

**SULTZER & LIPARI, PLLC**

Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
*sultzerj@thesultzerlawgroup.com*
*markowitzd@thesultzerlawgroup.com*

Nick Suciu III, Esq.*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, Michigan 48301
*nsuciu@milberg.com*

Russell M. Busch, Esq.
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe St., Suite 2100
Chicago, Illinois 60606
Email: *rbusch@milberg.com*

Trenton R. Kashima, Esq.*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
402 West Broadway St., Suite 1760
San Diego, California 92101
Email: tkashima@milberg.com

*Counsel for Plaintiff and the Class*