USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/13/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAYNE CATALANO, individually and on
behalf of all others similarly situated,

                           Plaintiff,

              -against-

GRIMMWAY ENTERPRISES, INC. d/b/a
GRIMMWAY FARMS,

                         Defendant.

7:24 CV 8817 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Wayne Catalano ("Plaintiff") brings this action, on behalf of himself and all others similarly situated, against Defendant Grimmway Enterprises, Inc. ("Defendant" or "Grimmway") for (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (2) violation of New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349; (3) violation of New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 350; (4) breach of implied warranty; and (5) unjust enrichment.[1] (*See* Complaint, ECF No. 1.) Defendants move to dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ("Motion," ECF No. 31.)

For the following reasons—because Plaintiff failed to meet his "burden of demonstrating that [he has] standing"— Defendants' Motion is GRANTED. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). Having determined that Plaintiff lacks standing, the Court does not reach the merits of the claims and dismisses the Complaint with prejudice.

---

[1] The Court notes that Plaintiff consented to dismissal of his implied warranty claim on March 28, 2025 by way of a letter to the Court. (ECF No. 20.) Out of an abundance of caution, Defendant nonetheless fully briefed on this claim.

1

**FACTUAL BACKROUND**

The following facts are taken from the Complaint and assumed to be true for the purpose of resolving Defendant's Motion.

Plaintiff alleges Grimmway manufactures, markets, advertises, and sells produce, including carrots. (Compl. at ¶¶ 1–2, 24.) On November 16, 2024, Grimmway issued a voluntary recall of certain whole carrots available for purchase at retail stores from August 14 through October 23, 2024 and certain baby carrot products with best-if-used-by dates ranging from September 11 through November 12, 2024 due to potential Escherichia coli (*E. coli*) contamination. (*Id.* at ¶¶ 1–2.)

Plaintiff alleges that he "purchased and used" Grimmway's carrots "that contained [*E. coli*], including the Carrots that were subject to the recall." (*Id.* at ¶ 54.) Specifically, Plaintiff purchased Nature's Promise Organic Whole Carrots (the "Subject Products") at a Stop & Shop store in Poughkeepsie, New York "in 2024". (*Id.*) Plaintiff does not specify when in 2024 he bought the Subject Product nor does he claim that he or anyone else became physically ill or was otherwise harmed as a result of consuming the Subject Product.

Plaintiff claims that he was deceived into purchasing the Subject Product because it was not advertised or labeled as containing *E. coli*. (*Id.* at ¶¶ 3, 8, 15, 16-19.) Plaintiff further claims that the Subject Product was "worthless" because it contained *E. coli* or that he paid a price premium for the Subject Product based on Grimmway's alleged misrepresentations and omissions. (*Id.* at ¶¶ 54–55.)

Based on the foregoing facts, Plaintiff brings the following claims: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (2) violation of New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349; (3) violation of New York's

Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 350; (4) breach of implied warranty; and (5) unjust enrichment.

**PROCEDURAL HISTORY**

Plaintiff commenced this action by filing a Complaint on November 19, 2024. (*See* Complaint.) Defendant moved to dismiss Plaintiff's Complaint and filed a Memorandum of Law and Reply in further support of their Motion. (ECF Nos. 31-32, 35.) Defendant also filed a request for judicial notice ("RJN") and a notice of supplemental authority. (ECF Nos. 34, 38.) Plaintiff filed an opposition to Defendant's motion as well as a response to Defendant's notice of supplemental authority. (ECF Nos. 33, 39.)

**LEGAL STANDARD**

**I.    Fed. R. Civ. P. 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") provides, in relevant part, that a case is properly dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. When resolving a Rule 12(b)(1) motion for lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1010-11 (2d Cir. 1986). Plaintiff bears the burden of demonstrating by a preponderance of the evidence that subject matter jurisdiction exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

**II.   Fed. R. Civ. P. 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in

the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ... and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.     Defendant's Request for Judicial Notice

In support of their Motion, Defendant submitted the following two documents as exhibits: (1) FDA webpage titled, "Grimmway Farms Recalls Organic Whole and Select Organic Baby Carrots That May Be in Consumers' Home Due to Potential E. coli Contamination" (Nov. 16, 2024), available on FDA's website at: https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/grimmway-farms-recalls-organic-whole-and-select-organic-baby-carrots-may-be-consumers-homes-due and (2) a public record on Grimmway's website.[2] (ECF No. 34.)

---

[2] Defendant notes that the aforementioned record is: "Status History" (Feb. 19, 2025), available on Grimmway's website at https://www.grimmway.com/status-history/.  The webpage was either removed or moved and is no longer available on the site, but Defendant attached a copy of the record to its request for judicial notice (Exhibit 2).

"In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (quoting *Samuels v. Air Transp. Loc*. 504, 992 F.2d 12, 15 (2d Cir. 1993) (alteration omitted)). "Courts may take judicial notice of public documents or documents of public record" in addition to "records of administrative bodies," such as government agencies like the U.S. Food and Drug Administration ("FDA"). *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018). Exhibit 1 is publicly available on the website of the FDA and Exhibit 2 is a copy of the relevant webpage that was at one point publicly available on Grimmway's website. *See Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 347 (S.D.N.Y. 2014) (taking judicial notice of defendant's website)*; Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'") (quoting Fed. R. Evid. 201(b)).

Accordingly, the Court grants Defendants' request for judicial notice of Exhibits 1-2 for the fact of their existence but not for the truth of the information contained therein.

## II.     Article III Standing

### A.  Applicable Law

A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and is properly brought under Fed. R. Civ. P. 12(b)(1). *See Carter v. HealthPort Techs. LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *see also Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) (standing is "threshold matter" in determining a

district court's jurisdiction to hear the case). In the class action context, plaintiff, as the party invoking federal jurisdiction, "bear the burden of demonstrating that [he has] standing." *Hicks v. L'Oreal U.S.A., Inc.*, No. 22 CIV. 1989 (JPC), 2024 WL 4252498, at *8 (S.D.N.Y. Sept. 19, 2024) (quoting *TransUnion*, 594 U.S. at 430). When determining a motion to dismiss an action for lack of subject matter jurisdiction, the Court must accept all factual allegations pled in the complaint as true. *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).

When faced with a motion asserting a combination of Rule 12(b) defenses, as Defendant does in the instant action, the Court must first resolve any jurisdictional challenges, such as whether Plaintiff has standing, before addressing whether the Complaint sufficiently states a claim. *See Hernandez v. Wonderful Co. LLC*, No. 23-CV-1242 (ER), 2023 WL 9022844, at *4 (S.D.N.Y. Dec. 29, 2023).

To demonstrate Article III standing, a plaintiff must establish (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) redressability of the injury by a "favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotations omitted). In a potential class action, the named class plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

## B. Analysis

In consumer product cases alleging economic injury from the purchase of a contaminated or misrepresented product, as Plaintiff alleges here, courts in this Circuit have consistently required

plaintiffs to plausibly allege that they themselves purchased a product containing the alleged contaminant. *See, e.g., Onaka v. Shiseido Americas Corp.*, No. 121CIV10665PAC, 2024 WL 1177976, at *4 (S.D.N.Y. Mar. 19, 2024) ("Plaintiffs have not adequately pleaded that the Products they purchased contained PFAS."); *Kell v. Lily's Sweets, LLC*, No. 23 CIV. 0147 (VM), 2024 WL 1116651, at *3 (S.D.N.Y. Mar. 13, 2024) ("[Plaintiff] must therefore plausibly allege that she herself purchased chocolate that contained lead. Her theory of standing is that lead-contaminated chocolate is worth less than chocolate free from any amount of lead; unless she has a basis to allege that her chocolate contained lead, she has no basis to allege that she overpaid for her chocolate.").

Here, Plaintiff has not plausibly alleged that the Subject Product—Nature's Promise whole carrots— was contaminated with *E. coli*. As a preliminary matter, Plaintiff has not pled sufficient facts to demonstrate that the Subject Product was even recalled, despite relying solely on Grimmway's recall notice to assert his claims. Grimmway's public announcement of its recall notice clearly states that the Nature's Promise whole carrots were subject to the recall only if they were from the bag size identified in the recall notice (1lb or 5lb) and "available for purchase at retail stores from August 14 through October 23, 2024." (RJN, Ex. 1.) Plaintiff alleges only that he purchased the Subject Product "during the class period" (unhelpfully defined as "the applicable statute of limitations period") and "in 2024," but does not provide the day or month, or bag size, to verify if the Subject Product was actually part of the recall. (Compl. ¶¶ 23, 54.) However, even assuming that Plaintiff made a purchase of a recalled product during the recall period, Plaintiff still falls short from establishing an injury in fact. As Defendant noted, Plaintiff does not claim to have tested the Subject Product, but he does claim that he "purchased *and used*" (i.e., consumed) the Subject Product, without alleging that he experienced any *E. coli* symptoms. (*Id.* ¶ 54 (emphasis added)). The only reasonable inference to draw from the fact that Plaintiff consumed the Subject

7

Product without incident is that the Subject Product was not contaminated. Thus, if Plaintiff purchased carrots, got carrots, and ate the carrots without incident, then he has not suffered any economic injury.

Moreover, courts across the country have repeatedly held that the existence of a recall alone does not establish that a particular unit of a product was defective or contaminated, and therefore does not, without more, establish standing. *See, e.g., Coffelt v. Kroger Co.*, No. EDCV161471JGBKKX, 2018 WL 6004543, at *11 (C.D. Cal. Aug. 17, 2018) (finding reasonable juror could not conclude plaintiff "was exposed to a dangerous substance (i.e., that the product he bought was contaminated)" where plaintiff ate recalled peas "without incident"); *Cerqua v. Stryker Corp.*, 2013 WL 1752284, at *5 (S.D.N.Y. Apr. 23, 2013) ("The fact of the recall alone cannot raise a triable issue of fact as to whether the particular implant here at issue was defective."); *Cothren v. Baxter Healthcare Corp.*, 798 F. Supp. 2d 779, 783 (S.D. Miss. 2011) (recall notices "themselves do not demonstrate the product in question was defective"). If plaintiffs under such circumstances had standing, then any consumer who happened to purchase a product later subject to recall could bring suit, even where the consumer cannot plausibly allege that the specific product purchased was defective, contaminated, or caused any harm. Such a rule would untether standing from the "concrete and particularized" injury required by Article III and open the door to baseless lawsuits.

Plaintiff attempts to overcome the fact that he cannot plead that the Subject Product was contaminated or purchased within the recall period by alleging that "the contaminated Product was distributed on a widespread basis," but this argument is unsupported. (Pl. Opp. at 6–8.) First, where a plaintiff elects to "indirectly" establish that he bought a contaminated product (as required for standing purposes), the plaintiff must allege that the contamination is so widespread across the

defendant's line as to render it plausible that any particular consumer, including the plaintiff, purchased a mislabeled product at least once. *See, e.g., Onaka*, 2024 WL 1177976, at *3–4. As Defendant notes, this requires alleging facts: (a) from which the Court can extrapolate isolated testing broadly to the defendant's entire line of products; and (b) showing that Plaintiff purchased the product with regular frequency, such that the court could infer a plausible likelihood of past injury. *Id*. First, there are no facts in Plaintiff's Complaint supporting the contention that *E. coli* contamination was so widespread among Grimmway carrots that Plaintiff plausibly purchased a contaminated product. Grimmway is a national distributor of carrots, thus it makes sense that its recall was nationwide, but a nationwide recall does not translate to widespread contamination. Such inference cannot establish standing. Further, Plaintiff also has not pled to any positive *E. coli* test nor can he test the Subject Product now as he has admitted he consumed it.

Finally, Plaintiff relies on the theory that exposure to a "risk of contamination" is itself sufficient to confer standing, but this argument is similarly unavailing. (Pl. Opp. at 6–11.) Plaintiff principally relies on *Baur v. Veneman*, which recognized that exposure to an enhanced risk of harm may constitute an injury in fact in certain food safety contexts. 352 F.3d 625 (2d Cir. 2003). But more recent Supreme Court authority—*TransUnion LLC v. Ramirez*—makes clear that enhanced risk supports standing only for injunctive relief, but in suits to recover damages, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm." 594 U.S. 413, 435–36 (2021). Where, as here, the alleged risk of harm never materialized—Plaintiff consumed the product and suffered no ill effects—the asserted risk does not constitute a concrete injury sufficient to support standing for damages. *See Maddox v. Bank of New York Mellon Trust Co.*, 19 F.4th 58, 64 (2d Cir. 2021) ("*TransUnion* established that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a…risk of future harm: 'No concrete harm; no standing.'") (quoting

*TransUnion*, 594 U.S. at 417). In short, Plaintiff asks the Court to infer injury from the *mere possibility* that the carrots he purchased might have been contaminated because of Grimmway's recall. Article III requires more.

Accordingly, because Plaintiff has failed to plausibly allege that the Subject Product was contaminated or that he suffered a concrete injury, economic or otherwise, traceable to Defendant's conduct, Plaintiff lacks standing.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Complaint is GRANTED. Further, Plaintiff's request for leave to amend is DENIED as futile. Defendant raised the deficiencies addressed in this Opinion in its memorandum of law, and Plaintiff failed to cure them in his opposition. (*See* Def. Mem. of Law at 8-13; Pl. Opp. at 6-11.) Based on the facts of this case, the Court finds that Plaintiff cannot remedy these deficiencies because he no longer possesses the Subject Product, having consumed it without incident, and because he cannot plead that he purchased the Subject Product within the recall period. Had such facts existed, Plaintiff would have included them in his opposition in response to the crux of Defendant's arguments. Accordingly, because amendment would be futile, Plaintiff's claims are dismissed with prejudice. *See Sodhi v. Mercedes Benz Fin. Servs.*, *USA, LLC*, 957 F. Supp. 2d 252, 255 (E.D.N.Y. 2013) ("[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile.") (citing *Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir. 2003)).

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 31 and to terminate this action.

SO ORDERED.

Dated: March 13, 2026
White Plains, New York

_____
Hon. Nelson S. Roman
U.S. District Court Judge, S.D.N.Y.